Argued February 7, reversed April 24, 1979

RSMJ, INC., *Respondent,*
*v.*
EMPLOYMENT DIVISION, *Petitioner.*
(CA 9311, SC 25964)
596 P2d 909

Jan P. Londahl, Assistant Attorney General, Salem, argued the cause for petitioner. With him on the brief were James A. Redden, Attorney General, and Al J. Laue, Solicitor General.

Alfred A. Hampson, Portland, argued the cause for respondent. On the brief was Richard V. Bayless, Hampson & Bayless.

LINDE, J.

## LINDE, J.

Under the unemployment compensation law, employers contribute to the Unemployment Compensation Trust Fund at rates which reflect each employer's past experience with respect to unemployment compensation paid to the employer's former employees. A new employer is taxed at the minimum rate of 2.7 percent. However, upon a transfer of ownership of a business to a new employer, that employer assumes the experience rating of the former employer and is taxed accordingly. This transfer of an existing experience rating is provided as follows in ORS 657.480:

> If the organization, trade or business, including the entire employing enterprise and all its incidents for all purposes of this chapter, of any employer is by purchase or otherwise transferred to an employing unit, whether or not such acquiring employing unit was an employing unit within the meaning of ORS 657.020 prior to such acquisition, the employing unit to which the transfer is made shall assume the position of such employer with respect to such employer's experience, payrolls and otherwise the same as if there had been no change in ownership and shall be required to assume and continue the experience of such employer pursuant to ORS 657.430 to 657.487.

In the present case, the Employment Division seeks review of a decision of the Court of Appeals which reversed the determination of a referee that RSMJ, Inc., succeeded to the experience rating of a business which RSMJ's president, Steven C. Cusick, had previously operated as a receiver. 35 Or App 105, 580 P2d 1055 (1978).

In the progress of the case, a loss of clarity appears to have occurred about what was before the court for review. The experience rating in question, resulting in a tax rate of 3.9 percent, was originally assigned to a tavern business operated by one Harry W. Olsen, Jr., under the name of "Frankenstein's." *See* ORS 657.459.

"Frankenstein's" was listed on the Employment Division's records as "account" or "firm" No. 216576. On March 22, 1976, the circuit court for Multnomah County appointed Steven C. Cusick receiver of "[t]hat business known as 'FRANKENSTEIN'S', located at 737 S.W. Front Avenue, Portland, Oregon, together with the entire inventory, all of the equipment, and all of the trade fixtures in connection therewith." The receiver obtained a new Employment Division "firm number," No. 232620.

On June 2, 1976, the Employment Division advised Cusick, as receiver, that the firm he was operating under the name "Frankenstein's," *i.e.* No. 232620, had been determined to be "successor-in-interest" to Olsen's "Frankenstein's," No. 216576, and was required under ORS 657.480, *supra,* to assume its experience rating.[1] The Division's notice stated that it would become final "unless within 15 days from the date of this Notice of Determination an application for hearing is made with respect thereto" under ORS 657.480 and ORS 657.485.[2] No application was made for a hearing on this determination assigning Olsen's experience rating for "Frankenstein's" to Cusick as receiver, so it became final.

[1] The phrase "successor-in-interest" does not appear in ORS 657.480 and is therefore not literally the criterion for deciding when one employing unit assumes th experience rating of another. The phrase may have been taken from the definition of "employer" in ORS 652.310.

[2] ORS 657.485 provided, in 1976:

(1) The administrator shall promptly notify each employer not later than November 15 of each year of his rate of contributions as determined pursuant to this chapter.

(2) Such determination shall become conclusive and binding upon the employer unless within 15 days after the mailing of notice thereof to his last-known address as shown by the records of the administrator or, in the absence of mailing, within 15 days after the delivery of such notice, the employer files an application in writing for review and redetermination with the administrator, setting forth his reasons therefor.

The statute was reworded by the 1977 session of the legislature, 1977 Or Laws, ch 528, §7; however, it still remains incumbent upon the taxpayer to protest promptly the determination of its tax rate, which othewise becomes final.

On July 27, 1976, the circuit court approved Cusick's final accounting as receiver and authorized him to transfer the remaining assets of the business known as Frankenstein's Tavern to RSMJ, Inc., as of July 15, 1976, upon RSMJ's agreement to assume the obligation to pay unpaid payroll and withholding taxes. The following year, on March 14, 1977, the Employment Division sent RSMJ, Inc., now doing business at the location of the former Frankenstein's under the name of "Sacks Front Avenue," a notice that the division had determined RSMJ, Inc., to be "successor-in-interest" of the receiver, *i.e.* the former firm No. 232620. RSMJ, Inc., now under the firm No. 240782, was therefore required to assume the experience rating of firm No. 232620. This was the same rating that firm No. 232620 had inherited from the original Frankenstein's No. 216576, when it went into receivership. RSMJ, Inc., applied for a hearing and redetermination of this determination of March 14, 1977, and a hearing was held on September 13, 1977. The referee affirmed the agency's determination. It is this decision of the referee that was brought before the Court of Appeals for judicial reveiw.

In its original application for a redetermination, RSMJ, Inc., correctly referred only to the determination that it was required to assume the experience rating of firm No. 232620. However, in an accompanying "memorandum of legal points and authorities," RSMJ, Inc., broadened its argument to contend that Cusick, as receiver, was not the successor of the Frankenstein's that had been operated by Olsen with firm No. 216576. That issue was not before the referee for review, having been determined a year earlier without challenge.[3] However, the presence of this argument in the memorandum apparently led the referee to include in his decision a discussion of the transfer from Olsen to the receiver, concluding that there was no change in the nature of the enterprise

---

[3] The memorandum also argued that RSMJ was not itself a successor to Olsen.

after this transfer, nor after the second transfer to RSMJ, Inc.

Thereafter, RSMJ, Inc., renewed its attack on the finding that the receiver was the successor of Olsen's business in its brief to the Court of Appeals. The eventual effect was to commingle the question of the 1977 determination, whether the business RSMJ, Inc., took over after the end of the receivership was the same as the business Cusick had operated as receiver, with the different question whether it was still the same business as it had been when Cusick became receiver the previous year, an issue not involved in the present proceeding. This commingling found its way into the opinion of the Court of Appeals. Thus the court reversed the referee in part on the ground that Olsen's employees had all left Frankenstein's before Cusick took control as receiver. But that is immaterial to the 1977 determination that RSMJ, Inc., succeeded to the receiver's rating, which depends on the continuity of the business in Cusick's management, not from Olsen to Cusick.

■■ The scope of judicial review of the referee's order is whether it is "unlawful in substance or procedure" or is not supported by substantial evidence in the whole record, ORS 183.482(8). The referee's findings of fact are laconic, consisting mostly of a recital of the dates of the legal events mentioned above. Findings pertinent to the issue of continuity between firms No. 232620 and No. 240782 include:

> (8) Mr. Cusick was and is president of RSMJ, Inc. and acted as manager of the successor firm "Sacks Front Avenue". (9) Other than the name change, and the general cleanliness of the premises, the business remained the same, in all respects, as it was under the receiver.

The Court of Appeals stated that the findings of the referee are supported by substantial evidence, and we agree. Petitioner's only attack on the key finding, numbered (9), is a general assertion that the receiver,

being legally charged with preserving the assets rather than making a profit, did not manage the business "in all respects" the same as RSMJ's private operation. No concrete evidence is cited to show how this led to an actual difference in operating the business pertinent to its unemployment experience rating. No attack was made on the sufficinecy of the *findings, see* ORS 183.470, *Wright v. State Ins. Commissioner,* 252 Or 283, 449 P2d 419 (1969), as distinct from the sufficiency of the evidence to support those that were made. Rather, RSMJ, Inc., contended, and the Court of Appeals held, that RSMJ, Inc., as a matter of law was not the transferee of the "trade or business, including the entire employing enterprise and all its incidents" within the meaning of ORS 657.480, *supra.*

■ The court reached this conclusion on the premise that RSMJ, Inc., took over from Frankenstein's only the location and food preparation and beverage dispensing equipment, but no employees. As stated above, we think this premise fails to distinguish facts concerning the 1977 transfer from the receiver to RSMJ, Inc., from facts concerning the 1976 succession of Frankenstein's, No. 232620, to Frankenstein's, No. 216576, which, though mentioned by the petitioner and the referee, are surplusage to the present case. In the absence of an attack on the evidentiary basis or the legal adequacy of the referee's findings (8) and (9), quoted above, there is no basis for holding his conclusion, that RSMJ, Inc., succeeds to Cusick's experience rating as receiver, to be contrary to ORS 657.480. The decision of the Court of Appeals must be reversed and the referee's decision reinstated.

Reversed.